IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DR. MARTEZE D. HAMMONDS,<br>    Plaintiff,<br>vs.<br>BOARD OF TRUSTEES OF PURDUE UNIVERSITY, in their official capacities,<br>    Defendant. | Case No. 1:24-cv-01669 |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff DR. MARTEZE D. HAMMONDS, by and through counsel, and for his cause of action against Defendant BOARD OF TRUSTEES OF PURDUE UNIVERSITY alleges and states as follows:

### I.     PARTIES

1. At all times relevant and material to this cause of action, Plaintiff DR. MARTEZE D. HAMMONDS is the Chief Diversity Officer for Defendant, is a resident of Fort Wayne, Indiana, and received the right to sue Defendant by way of his complaint at the EEOC in Indianapolis, Indiana.

2. At all times relevant and material to this cause of action, Defendant the BOARD OF TRUSTEES OF PURDUE UNIVERSITY is the executive body for Purdue University, an educational institute incorporated in the State of Indiana, with a principal office in the State of Indiana. The individual members of the Board are sued in their official capacities. Defendant employed in excess of five hundred employees at all relevant times in this matter. Accordingly, Defendant is an

"employer" as that term is defined in Section 1981 and Title VII of the Civil Rights Act of 1964.

## II.  JURISDICTION AND VENUE

3. This action involves employment discrimination based on race.

4. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's lawsuit.

5. This suit is authorized and instituted pursuant to 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000 et al., as amended by the Civil Rights Act of 1991.

6. Plaintiff exhausted his administrative remedies with the Equal Employment Opportunity Commission and was granted the right to sue on June 28, 2024.

7. Venue lies in the United Stated District Court, Southern District of Indiana pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III.  ALLEGED FACTS

8. DR. MARTEZE D. HAMMONDS is the Chief Diversity Officer and the only African American employee on a senior executive level at Purdue University Fort Wayne.

9. Hammonds worked for Defendant for approximately four years and had never been disciplined before the incident at issue in this case.

10. Between about March and May 2023, Hammonds met with members of Defendant's executive team as part of his normal work as the Chief Diversity Officer.

11. During these meetings, Hammonds complained of ongoing issues of employment discrimination perpetuated by Defendant.

12. Hammonds pointed to Defendant's documented racial animus towards its employees, as well as employees that have resigned or transferred because they experienced discriminatory treatment from Defendant.

13. Hamonds also complained that Defendant's internal audit on discriminatory practices against its own employees was effectively skewed due to racial bias.

14. Defendant rejected the report and dismissed Hammonds complaints.

15. In October, Hammonds' executive assistant requested a remote workday.

16. Defendant's benefits director recommended that Hammonds deny her request, which he did.

17. Hammonds utilized his discretion as a supervisor to deny her remote work request.

18. In November, Defendant retroactively approved that remote workday.

19. Defendant alerted Hammonds that it had a policy that supervisors can only deny remote work if the requesting employee's work quality drops.

20. In December, Defendant notified Hammonds that he would be disciplined for denying his assistant's remote workday.

21. At his disciplinary hearing, Hammonds pointed to Defendant's recommendation that he had discretion to deny the remote workday and complained of disparate discipline based on his race as an African American.

22. In March 2024, Defendant formally disciplined Hammonds and issued the following sanctions:

    a. He was directed to complete training in the areas of effective supervising practices and protected leave.

    b. He was required to identify this training and obtain Defendant's approval no later than May 1, 2024.

    c. He was required to complete the training at his expense and submit documentation to Defendant no later than August 1, 2024.

23. Hammonds appealed this decision and complained of discrimination.

24. On about April 22, 2024, Defendant affirmed the discipline on appeal and also increased Hammonds' discipline in the following ways:

    a. His supervisor training was increased to 10 hours.

    b. He was ineligible to receive a merit increase for the 2024-2025 school year, and

    c. Defendant placed a formal letter of reprimand in his personnel file.

25. Hammonds complained that he was the only senior executive disciplined for not allowing his employee to work remotely based on his race and in retaliation for complaining about discrimination.

26. Defendant stated that the sanctions against Hammonds were more severe based on his advocacy for diversity and inclusion.

27. On about April 29, 2024, Defendant again increased Hammonds' discipline in the following ways:

4

    a. His executive coaching sessions were suspended indefinitely; and

    b. He received a 12-month moratorium on any organizational changes within his functional reporting units.

28. On May 17, 2024, Hammonds filed a complaint with the EEOC for Defendant's disparate discipline against him based on his race and in retaliation for complaining of discrimination.

29. Around that time, Hammonds proposed to Defendant that he attend training courses with the EEOC and the university to timely comply with his sanction. Defendant denied this request.

30. Instead, Defendant directed Hammonds to pay approximately $6,000 to their lawyers for one-on-one training on employment matters.

31. On June 28, 2024, the EEOC issued a notice of Hammonds' right to sue.

### IV. CLAIMS

#### Count I – Disparate Discipline

32. Plaintiff adopts and realleges all the foregoing paragraphs, as stated above, and furthermore states and alleges as follows:

33. Hammonds and other employees of Defendant that are in a supervisory role were subject to the same standards and under the same chancellor regarding the approval and denial of remote work.

34. Similarly situated employees who were disciplined for denying the remote work requests of their subordinates were sent to free training at the university.

35. Hammonds engaged in similar conduct when he denied his executive assistant's remote work request, but his discipline included attorneys' fees, denial of a raise, and suspension of his job duties.

36. Defendant failed to use the progressive discipline that it gives to other employees with Hammonds because of his race and because he complained of race discrimination.

37. Defendant punished Hammonds with unreasonable consequences because of his race, and because he complained of race discrimination.

### Count II – Retaliation for Complaining of Discrimination

38. Plaintiff adopts and realleges all of the foregoing paragraphs, as stated above, and furthermore states and alleges as follows:

39. Hammonds engaged in protected activity when he complained about racial discrimination within the university as a whole, and the discriminatory application of disciplinary charges directed at himself for denying his assistant's remote work.

40. Shortly after complaining of race discrimination, Hammonds suffered adverse actions from Defendant, who disciplined him and issued severe punishment in the form of sanctions.

41. Hammonds' sanctions were more expensive, the training was longer, he was required to meet with Defendant's attorneys, he was denied a raise, and a formal letter of reprimand was placed in his personnel file.

42. These sanctions were causally linked to Hammonds' protected activity.

43. Had Hammonds not complained about racial discrimination, Defendant would not have sanctioned him so severely.

### Count III – Retaliation for Filing an EEOC Complaint

44. Plaintiff adopts and realleges all of the foregoing paragraphs, as stated above, and furthermore states and alleges as follows:

45. Hammonds engaged in protected activity when he filed an EEOC complaint.

46. Shortly after filing the EEOC complaint, Hammonds suffered adverse action from Defendant, who increased the punishment for the same discipline.

47. Defendant added the additional sanctions of suspending his coaching and placing a moratorium on his job duties.

48. Defendant retaliated against Hammonds because he filed his EEOC complaint by increasing the punishment for his discipline.

49. Had Hammonds not complained to the EEOC about racial discrimination, Defendant would not have increased the sanctioned against him.

### V. JURY DEMAND

50. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

### VI. PRAYER FOR RELIEF

Plaintiff DR. MARTEZE HAMMONDS, by and through counsel, prays for all available damages against the Defendant the BOARD OF TRUSTEES OF PURDUE UNIVERSITY including consequential, punitive damages, costs and fees, trial by jury, and for all other relief just and proper on the premises.

Respectfully Submitted,

/s/ Faith E. Alvarez
Faith E. Alvarez (32497-49)
ALVAREZ LEGAL, LLC
5625 German Church Road, Suite 3244
Indianapolis, IN 46235
Phone: (317) 943-3116
faith@faithalvarez.com
Attorney for Plaintiff